M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
Brandon P. Jack (SBN 325584)
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: 916.823.6955
anderson@emeryreddy.com
gregory@emeryreddy.com
brandon@emeryreddy.com

John J. Nelson (SBN 317598)
**MILBERG, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (858) 209-6941
jnelson@milberg.com

Jason T. Dennett*
**MILBERG, PLLC**
1700 7th Avenue, Suite 2100
Seattle, WA 98101
Telephone: (516) 515-9124
jdennett@milberg.com

Gary M. Klinger*
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: 866.252.0878
gklinger@milberg.com

*Attorney for Plaintiffs and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

LAUREN HATCHER and VASHONTE MAJOR, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

SHOEDAZZLE, LLC, JUSTFAB, LLC, and TFG HOLDING, INC., dba ShoeDazzle,

Defendants.

Case No. 2:26-cv-06459

**CLASS ACTION COMPLAINT FOR DAMAGES**

**DEMAND FOR JURY TRIAL**

Plaintiff Lauren Hatcher and VaShonte Major ("Plaintiffs") on behalf of themselves and all others similarly situated, by and through counsel, bring this

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 1

action against Defendants ShoeDazzle, LLC, JustFab, LLC, and TFG Holding, Inc., d/b/a ShoeDazzle (collectively "Defendant" or "ShoeDazzle"). The allegations contained herein, which are based on Plaintiffs' knowledge of facts pertaining to themselves and their own actions and counsels' investigations, and upon information and belief as to all other matters, are as follows:

**NATURE OF THE CASE**

1.　　This class action arises from ShoeDazzle's retention of profits generated by unlawful tariffs imposed by the federal government under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, *et seq*.

2.　　Beginning in February 2025, the federal government imposed sweeping tariffs on imports from numerous countries under purported authority of the IEEPA. Those tariffs dramatically increased the cost of imported consumer goods sold in the United States.

3.　　U.S. importers—including ShoeDazzle—responded by increasing prices on consumer goods to offset the cost of these tariffs. As a result, American consumers paid higher retail prices for consumer goods reflecting the economic burden of those tariffs.

4.　　ShoeDazzle imposed an explicit tariff surcharge on consumer purchases, including at checkout through its website.

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 2

5. On February 20, 2026, the Supreme Court of the United States held that the IEEPA-based tariffs were unlawful. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026).

6. As a consequence of that decision, importers who paid those tariffs—including ShoeDazzle—became entitled to refunds of the duties they previously paid to U.S. Customs and Border Protection ("CBP").

7. ShoeDazzle collected the tariffs from consumers through its tariff surcharge. The federal government owes it refunds of the same tariff payments.

8. Unless restrained by this Court, ShoeDazzle stands to recover the same tariff payments twice—once from consumers and again from the federal government through tariff refunds, including interest paid by the government on those funds.

9. ShoeDazzle has made no legally binding commitment to return tariff-related surcharges to the consumers who actually paid them.

10. Plaintiffs bring this action on behalf of millions of consumers who purchased goods from ShoeDazzle during the Class Period and who paid tariff surcharges reflecting ShoeDazzle's pass-through of unlawful tariffs.

11. Plaintiffs seek restitution of those tariff overcharges, together with appropriate declaratory, injunctive, and monetary relief.

///

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 3

## JURISDICTION AND VENUE

12.    Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(d)(2) because: (a) at least one member of the class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under that subsection apply to this action.

13.    The Court has personal jurisdiction over Defendant because ShoeDazzle is headquartered in El Segundo, California which is within this district, conducts significant business transactions in this District, and because the wrongful conduct occurred in and emanated from this District.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business in located in this District in El Segundo, California, and a substantial portion of the events and conduct giving rise to the claims occurred in this District.

## PARTIES

18.    Plaintiff Lauren Hatcher is a resident and citizen of Detroit, Michigan. During the Class Period, Plaintiff Hatcher purchased goods from ShoeDazzle that were imported from countries subject to the IEEPA tariffs. Plaintiff Hatcher paid retail prices for those goods that were increased by ShoeDazzle's tariff surcharge to account for the tariffs imposed on imported products. Plaintiff Hatcher would

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 4

not have paid those higher prices absent the unlawful tariffs and ShoeDazzle's pass-through of those tariffs to consumers.

19. Plaintiff VaShonte Major is a resident and citizen of Birmingham, Alabama. During the Class Period, Plaintiff Major purchased goods from ShoeDazzle that were imported from countries subject to the IEEPA tariffs. Plaintiff Major paid retail prices for those goods that were increased by ShoeDazzle's tariff surcharge to account for the tariffs imposed on imported products. Plaintiff Major would not have paid those higher prices absent the unlawful tariffs and ShoeDazzle's pass-through of those tariffs to consumers.

20. Defendant JustFab, LLC is a is a Delaware LLC with its principal place of business in El Segundo, California. Together with the other Defendants, it is responsible for the marketing, distribution, and sale of ShoeDazzle products in the United States.

21. Defendant ShoeDazzle, LLC is a is a Delaware LLC with its principal place of business in El Segundo, California. Together with the other Defendants, it is responsible for the marketing, distribution, and sale of ShoeDazzle products in the United States.

22. Defendant TFG Holding, Inc. is a Delaware corporation with its principal place of business in El Segundo, California. It does business as ShoeDazzle. Together with the other Defendants, TFG Holding, Inc. is responsible

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 5

for the marketing, distribution, and sale of ShoeDazzle products in the United States. A significant portion of the products ShoeDazzle sells are imported goods subject to IEEPA tariffs imposed by the United States government.

## FACTUAL BACKGROUND

**A.    SHOEDAZZLE'S BUSINESS**

23.    ShoeDazzle is a retail apparel and fashion company headquartered in El Segundo, California. The company identifies its primary location as 800 Apollo Street, El Segundo, California 90245, and describes itself as a privately held company in the "Retail Apparel and Fashion" industry.[1]

24.    ShoeDazzle was established in 2009 and sells shoes, clothing, handbags, jewelry, and accessories.[2]

25.    ShoeDazzle operates through a direct-to-consumer retail model centered on its website, *ShoeDazzle.com*, where consumers purchase apparel products directly from Defendant.[3]

26.    ShoeDazzle also operates a membership-based pricing model known as VIP Membership. Under this model consumers pay a monthly subscription fee

---

[1] *See* Shoedazzle LinkedIn Profile, https://www.linkedin.com/company/shoedazzle (last accessed June 5, 2026).
[2] *See* Shoedazzle, *Welcome to Shoedazzle*, https://www.shoedazzle.com/about-us (last accessed June 5, 2026).
[3] *See Id.*

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 6

($49.95/month) and can use VIP Credits accumulated through the payment of that monthly fee at checkout.[4]

27. ShoeDazzle's business depends on selling apparel and textile products—categories that are heavily import-dependent. Apparel sold in the United States is overwhelmingly sourced through global supply chains, and the United States is the world's largest apparel importer, with the majority of apparel imports originating from Asia, including countries such as China and Vietnam.[5]

28. During the Class Period, ShoeDazzle imposed tariff surcharges on consumers at checkout.

29. The exact amount of tariff charges is currently unknown but will be uncovered during discovery.

30. On information and belief, ShoeDazzle began imposing tariff-related surcharges on consumer purchases no later than April 2025 and did so in direct response to the federal government's imposition of tariffs that same month.

31. ShoeDazzle's surcharge is a direct admission that tariffs affected Defendant's cost structure and that Defendant chose to shift at least part of that

---

[4] *See* Shoedazzle, *How ShoeDazzle's VIP Membership Works*, https://www.shoedazzle.com/how-it-works (last accessed June 5, 2026).
[5] *See* U.S. Int'l Trade Comm'n, *Apparel: Export Competitiveness of Certain Foreign Suppliers to the United States*, Inv. No. 332-602, USITC Pub. No. 5501 (Sept. 2024).

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 7

tariff burden to consumers. Rather than absorbing the tariff costs itself, ShoeDazzle separately charged consumers a surcharge tied to those tariffs.

## B.    THE IEEPA TARIFFS

32.    Beginning in February 2025, President Trump invoked the IEEPA to impose tariffs on imports from numerous foreign countries pursuant to a series of executive orders declaring national emergencies related to trade and supply chain concerns.[6]

33.    Those executive orders imposed sweeping tariffs on imports from key U.S. trading partners. The orders included duties of approximately 25 percent on many imports from Canada and Mexico and additional tariffs on imports from China that were layered on top of existing duties, resulting in substantially higher effective tariff rates on Chinese goods.[7]

34.    The tariffs significantly increased the cost of imported consumer goods entering the United States, particularly for retailers and other businesses that

---

[6] *See* Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

[7] *See* Andrea Shalal, Jarret Renshaw & David Lawler, *Trump launches trade war with tariffs on Mexico, Canada and China*, Reuters (Feb. 1, 2025), https://www.reuters.com/business/trump-readies-order-steep-tariffs-goods-mexico-canada-china-2025-02-01/ (last accessed June 5, 2026).

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 8

rely heavily on international supply chains to source merchandise—like Defendant ShoeDazzle.[8]

35.    Under U.S. customs law, the importer of record is responsible for paying tariffs when goods enter the United States. Accordingly, importers of record—including ShoeDazzle—were required to pay the IEEPA tariffs to U.S. CBP upon entry of covered merchandise into the country.[9]

36.    Numerous importers challenged the legality of the IEEPA tariffs in the United States Court of International Trade, arguing that the President lacked statutory authority under IEEPA to impose tariffs of that nature.[10]

37.    On February 20, 2026, the Supreme Court of the United States held that the challenged tariff regime was unlawful and that IEEPA does not authorize the President to impose tariffs of the type challenged in that litigation and

---

[8] *See* Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018 Tariffs on Prices and Welfare*, 33(4) J. Econ. Persp. 187 (2020), https://pubs.aeaweb.org/doi/pdfplus/10.1257/jep.33.4.187 (last accessed June 5, 2026).
[9] *See* CBP, *Importing Into the United States: A Guide for Commercial Importers* (2006), https://www.cbp.gov/sites/default/files/documents/Importing%20into%20the%20U.S.pdf (last accessed June 5, 2026).
[10] *See* Reuters, *Trump administration sued over tariffs in US Court of International Trade*, The Business Standard (Apr. 15, 2025), https://www.tbsnews.net/worldbiz/usa/trump-administration-sued-over-tariffs-us-court-international-trade-1116021 (last accessed June 5, 2026).

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 9

invalidated the tariff orders issued pursuant to that statute. *Learning Res., Inc. v. Trump*, 607 U.S. ___, 146 S.Ct. 628 (2026).

38.    The Supreme Court's decision effectively eliminated the legal basis for the IEEPA tariffs and created a pathway for importers that had paid those duties—including ShoeDazzle—to seek refunds of the tariffs previously collected by the federal government.

39.    The tariffs invalidated by the Supreme Court were part of a sweeping trade policy announced on April 2, 2025—referred to by the Trump administration as "Liberation Day." On that date, the President declared a national emergency and invoked the IEEPA to impose broad tariffs on imported goods entering the United States.

40.    As part of the "Liberation Day" program, the federal government imposed a baseline tariff of approximately 10% on nearly all imports, with additional "reciprocal" tariffs targeting specific countries at higher rates, including major U.S. trading partners.

41.    These tariffs were implemented within days of the announcement, with the baseline tariffs taking effect on or about April 5, 2025, and higher country-specific tariffs scheduled to take effect shortly thereafter.

42.    The scope and structure of the "Liberation Day" tariffs represented a dramatic departure from prior U.S. trade policy, applying broadly across industries

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 10

and affecting a wide range of imported consumer goods, including apparel and textile products sold by companies like ShoeDazzle.

43.    In response to the "Liberation Day" tariffs, and in anticipation of the same, companies that relied on imported goods—including apparel retailers like ShoeDazzle—began adjusting pricing, sourcing, and supply chain strategies to account for increased import costs.

44.    The tariffs imposed above remained in effect throughout the Class Period.

## C.    TARIFFS ARE ECONOMICALLY BORNE BY CONSUMERS

45.    Economists and government agencies widely recognize that tariffs are largely borne by domestic consumers rather than foreign exporters or the importing firms that formally remit the duties.

46.    Economic studies examining recent U.S. tariff regimes consistently find that the cost of tariffs is passed through into higher prices paid by U.S. purchasers of imported goods.[11]

---

[11] *See* Julian Hinz, *et al.*, *America's Own Goal: Who Pays the Tariffs?*, Kiel Inst. for the World Econ. (Jan. 2026), https://www.kielinstitut.de/fileadmin/Dateiverwaltung/IfW-Publications/fis-import/92fb3f30-07b8-4dcf-b2bc-fbefb831f1a1-KPB201_EN.pdf (last accessed June 5, 2026); *see also* Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018 Tariffs on Prices and Welfare*, 33(4) J. Econ. Persp. 187 (2020), https://pubs.aeaweb.org/doi/pdfplus/10.1257/jep.33.4.187 (last accessed May 27, 2026).

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 11

47.     When tariffs increase the cost of imported goods, retailers and other downstream sellers typically raise prices to offset those additional costs. Surveys of U.S. businesses conducted by the Federal Reserve Bank of New York during the recent tariff period found that a large majority of companies facing tariff-related cost increases passed at least some portion of those costs through to their customers in the form of higher prices.[12] Companies consider tariffs to be costs that are to be incorporated into the pricing structure.

48.     Similarly, the Federal Reserve Bank of Dallas recently confirmed that the 2025–2026 tariffs materially increased consumer prices and that "pass-through from the 2025 tariffs is effectively complete," meaning the costs of the tariffs were ultimately borne by purchasers through higher prices.[13]

49.     The Dallas Federal Reserve further explained that tariff collections "boosted core goods PCE[14] inflation by approximately 2.2 percentage points" and

[12] *See* Jaison R. Abel, Richard Deitz & Jason Bram, *Are Businesses Absorbing the Tariffs or Passing Them On to Their Customers?*, Fed. Rsrv. Bank of N.Y. Liberty Street Econ. (June 4, 2025), https://libertystreeteconomics.newyorkfed.org/2025/06/are-businesses-absorbing-the-tariffs-or-passing-them-on-to-their-customers/ (last accessed June 5, 2026).
[13] *See* Ron Mau & Tucker Smith, Effects of Realized Tariff Changes on PCE Prices Peaked in First Quarter 2026, Fed. Rsrv. Bank of Dall. (May 5, 2026), available at: https://www.dallasfed.org/research/economics/2026/0505-mau (last accessed June 5, 2026)
[14] "PCE" refers to Personal Consumption Expenditures, an economic measure of how much consumers are spending on goods and services in the economy.

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 12

increased overall core PCE inflation by approximately 0.8 percentage points, reflecting widespread downstream price increases imposed on consumers as businesses passed tariff costs through the supply chain.[15]

50.     These findings confirm that tariffs imposed during the relevant period functioned as a direct economic burden on consumers because businesses responded to the tariffs by increasing prices charged to end purchasers rather than internally absorbing the additional costs.

51.     ShoeDazzle followed this same pattern during the tariff period.

52.     During the Class Period, ShoeDazzle imposed an explicit tariff-related surcharge on consumer purchases at checkout.

53.     Public sources reflect that Defendant's tariff surcharge was not fixed at a single rate for the entire Class Period. In his announcement of a multistate settlement with the Defendant for deceptive advertising and billing, Minnesota Attorney General Keith Ellison said ShoeDazzle included tariff surcharge of 3.75% to 5.25%. Another example of the Defendant's tariff surcharge was as high as 9.35%.[16]

---

[15] *See* Ron Mau & Tucker Smith, Effects of Realized Tariff Changes on PCE Prices Peaked in First Quarter 2026, Fed. Rsrv. Bank of Dall. (May 5, 2026), available at: https://www.dallasfed.org/research/economics/2026/0505-mau (last accessed June 5, 2026).

[16] *See* The Office of Minnesota Attorney General Keith Ellison, *Attorney General Ellison secures injunction and nearly $365k in settlement with clothing retailer*

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 13

54.     Additional publicly available consumer-facing materials and reports, including screenshots of ShoeDazzle's checkout disclosures, similarly reflect tariff-related surcharges at varying percentage levels, further confirming that the surcharge was applied inconsistently across transactions.[17]

55.     The existence of multiple surcharge rates confirms that ShoeDazzle was not merely passing through a uniform, government-imposed tariff rate, but instead exercised discretion in determining the amount charged to consumers. This variability demonstrates that the surcharge was a pricing mechanism controlled by Defendant rather than a fixed or unavoidable charge dictated solely by law.

56.     In addition, ShoeDazzle's own Terms of Service reserve the right to impose "fees associated with tariff taxes and surcharges," further confirming that Defendant contemplated and implemented tariff-related charges in connection with consumer purchases.[18]

_____

*regarding deceptive advertising and billing*, Press Release (October 23, 2025), available                                                                                          at https://www.ag.state.mn.us/Office/Communications/2025/10/23_TFG-Holdings.asp (last accessed June 5, 2026); *see also* Plaintiff Lauren Hatcher's Receipt Exhibit.

[17] *See*, e.g., TikTok post showing Shoedazzle tariff surcharge disclosure, https://www.tiktok.com/@hotelier24/photo/7493969130773646622?_r=1&_t=ZT-96xwC4GE2zl (last accessed June 5, 2025).

[18] *See* Shoedazzle Terms of Service, https://www.shoedazzle.com/policy-terms (last accessed June 5, 2026).

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 14

57.    These representations were made directly to consumers in connection with their purchases and were intended to explain the basis for the additional charge imposed at checkout.

58.    ShoeDazzle's statements constitute an express admission that: (a) tariffs increased its cost of goods, and (b) those increased costs were being passed through to consumers.

59.    As a result, consumers purchasing goods from ShoeDazzle during the Class Period were required to pay an additional amount expressly tied to tariffs, separate from the base price of the merchandise.

60.    This surcharge functioned as a direct pass-through of tariff costs from ShoeDazzle to its customers.

61.    ShoeDazzle's own explanation confirms that the surcharge was not incidental or unrelated to tariffs; rather, it was imposed specifically because tariffs increased Defendant's costs.

62.    This further confirms that ShoeDazzle treated tariffs as a cost to be incorporated into consumer pricing, whether through an explicit surcharge or otherwise.

63.    Consumers had no meaningful ability to avoid this charge other than by declining to complete their purchases, as the surcharge was imposed at checkout.

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 15

64.     As a result of Defendant's conduct, Plaintiffs and Class members paid inflated prices for ShoeDazzle products that included tariff-related surcharges.

65.     ShoeDazzle's imposition of this surcharge establishes a clear and traceable link between:

    a.  the tariffs imposed by the federal government;

    b.  the additional charges imposed by Defendant, and

    c.  the amounts paid by consumers.

66.     This direct link eliminates any ambiguity regarding whether tariff costs were passed through to consumers.

67.     Plaintiffs and Class members paid tariff-inflated prices at ShoeDazzle during the Class Period, while ShoeDazzle now seeks to retain the consumer pass-through even though the federal government owes it a refund of the same unlawful tariff charges.

**D.     TARIFFS INVALIDATED BY SCOTUS**

68.     As described above, in February 2026, the Supreme Court held that the President's tariff regime exceeded the statutory authority granted by IEEPA and invalidated the challenged tariff orders.[19] Following the SCOTUS decision,

---

[19] *See Learning Res., Inc. v. Trump*, 607 U.S. ___ (2026).

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 16

importers that had paid IEEPA tariffs—including ShoeDazzle—became eligible to pursue refunds of those duties.

69.    On March 4, 2026, the Court of International Trade, in *Atmus Filtration, Inc. v. United States*, ordered U.S. CBP to stop liquidating IEEPA duties and to reliquidate previously liquidated IEEPA duties where possible, and indicated that the relief extended to "all importers of record" that paid IEEPA duties, including importers that had not filed their own refund suits.[20]

70.    The scale of the refund process is unprecedented. Public reporting estimates that approximately $166 billion in tariffs collected under the IEEPA regime must be refunded to more than 330,000 importers across roughly 53 million import entries.[21]

71.    By late April 2026, millions of entries had already entered the refund pipeline, and the federal government began preparing to issue payments to importers as early as May 2026.[22]

---

[20] *See Atmus Filtration, Inc. v. United States*, No. 26-01259, (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21.

[21] *See* Reuters, *U.S. says first refunds from Trump tariffs expected around May 11* (April 29, 2026), available at https://www.reuters.com/legal/government/us-says-first-refunds-trump-tariffs-expected-around-may-11-2026-04-29/ (last accessed June 5, 2026).

[22] *Id.*

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 17

72. These post-decision developments confirm that tariff refunds are not speculative or hypothetical. Rather, they are imminent, substantial, and already in the process of being distributed to importers.

73. Accordingly, ShoeDazzle's retention of tariff-related surcharges—while simultaneously owed refunds of those same tariffs—creates a concrete and immediate risk of double recovery that this Court can and should address.

74. ShoeDazzle stands to recover substantial sums if tariff refunds are paid.

75. ShoeDazzle can expect to recover significant tariff refunds corresponding to duties it paid during the Class Period. Those expected refunds are especially significant here because ShoeDazzle previously passed tariff-related cost increases through to consumers in the form of higher retail prices, meaning ShoeDazzle now seeks to recover from the government duties whose economic burden was borne, in whole or in part, by the Plaintiffs and Class members.

76. In practical terms, ShoeDazzle stands to receive a windfall: it has already recouped tariff costs from consumers through tariff surcharges, and it now stands in line to recover those same unlawful tariff payments from the federal government.

///

///

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 18

**PLAINTIFF LAUREN HATCHER'S EXPERIENCE**

77.    Plaintiff Lauren Hatcher is a ShoeDazzle customer and had a ShoeDazzle membership at the time of her purchases.

78.    Plaintiff Hatcher purchased multiple items during the Class period where she was charged a tariff surcharge.

79.    For example, on November 13, 2025, Plaintiff Hatcher made a purchase from ShoeDazzle. Upon checkout, ShoeDazzle imposed a charge which it labeled as "Tariffs" totaling $9.34, as illustrated by the attached receipt exhibit.

80.    Plaintiff Hatcher is entitled to a refund of all the tariff surcharges, plus interest, she paid to ShoeDazzle.

**PLAINTIFF VASHONTE MAJOR'S EXPERIENCE**

81.    Plaintiff VaShonte Major is a ShoeDazzle customer and had a ShoeDazzle membership at the time of her purchase.

82.    Plaintiff Major made purchase during the Class period where she was charged a tariff surcharge.

83.    Specifically, on December 8, 2025, Plaintiff Major made a purchase from ShoeDazzle. Upon checkout, ShoeDazzle imposed a charge which it labeled as "Tariffs" totaling $3.20, as illustrated by the attached receipt exhibit.

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 19

84.    Plaintiff Major is entitled to a refund of the tariff surcharge, plus interest, she paid to ShoeDazzle.

## CLASS ALLEGATIONS

85.    A class action is the proper forum to bring Plaintiffs' claims under FRCP 23. The potential Class is so large that joinder of all members would be impracticable. Additionally, there are questions of law or fact common to the Class, the claims or defenses of the representative parties are typical of the claims or defenses of the Class, and the representative parties will fairly and adequately protect the interests of the Class.

86.    This action satisfies all of the implicit and explicit requirements of FRCP, including numerosity, commonality, typicality, adequacy, predominance and superiority.

87.    **Numerosity**: the Class is so numerous that joinder of all members is impracticable.  While the exact number is not known at this time, it is generally ascertainable by appropriate discovery.  Given the consumer base of ShoeDazzle, the class numbers in the hundreds of thousands or millions of consumers.

88.    **Commonality:** the claims made by Plaintiffs meet the commonality requirement because they present shared questions of law and fact, and resolving these questions will resolve the classwide litigation. These shared questions predominate over individual questions, and they include, without limitation:

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 20

a.  whether ShoeDazzle paid tariffs imposed under the International Emergency Economic Powers Act ("IEEPA") on imported goods during the Class Period;

b.  whether ShoeDazzle increased retail prices on goods sold to consumers in response to those tariffs;

c.  whether ShoeDazzle passed through some or all of the tariff costs to consumers through higher prices;

d.  whether ShoeDazzle sought or will seek refunds of those tariffs from the federal government;

e.  whether ShoeDazzle's retention of tariff refunds corresponding to tariff costs paid by consumers constitutes unjust enrichment;

f.  whether ShoeDazzle's conduct was unfair under applicable consumer protection laws;

g.  whether the tariff surcharge provision of the retail sales contract was based on a mutual mistake of law;

h.  whether the retail sales contract included an unlawful term;

i.  whether the tariff surcharge provision is unconscionable; and

j.  the appropriate measure of restitution, damages, or other relief resulting from ShoeDazzle's conduct.

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 21

89. **Typicality**: Plaintiffs' claims are typical of those of the other Class members because Plaintiffs, like every other Class member, bought products from ShoeDazzle subject to tariff related price increases.

90. The claims of the Class Representative Plaintiffs are furthermore typical of other Class members because they make the same claims as other Class members. Plaintiffs have an interest in seeking compensation from Defendant.

91. **Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class members.

92. **Superiority:** The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 22

afford to litigate a complex claim against large corporate defendants. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical.

93.    The nature of this action and the nature of laws available to Plaintiffs and the Class makes the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged. Without the class action mechanism, Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; and the costs of individual suits could unreasonably consume the amounts that would be recovered. Likewise, proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class, and will establish the right of each member of the Class to recover on the cause of action alleged; and Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

94.    The proposed Nationwide Class is described as follows:

All persons in the United States who purchased goods from ShoeDazzle during the Class Period on which ShoeDazzle imposed a tariff surcharge.

95.    The "Class Period" is the period during which Defendant assessed tariff related charges to consumers. The precise contours of the Class Period can

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 23

only be determined through discovery. In no event shall the Class Period be less than the period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, concealment, and accrual issues, and ending on the date of entry of judgement or preliminary approval of a settlement.

96.    Plaintiffs reserve the right to modify or amend the definition of the proposed class, Class Period, and proposed subclasses, before the Court determines whether certification is appropriate and as the parties engage in discovery.

97.    Plaintiffs will fairly and adequately protect the interests of the Class. The interests of the class representative are consistent with those of the other members of the Class. In addition, Plaintiffs are represented by experienced and able counsel who have expertise in the areas of tort law, trial practice, and class action representation.

98.    The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

99.    Excluded from the Class are:

   a.  Defendant and any entities in which Defendant has a controlling interest;

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 24

b.  Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant;

c.  The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

d.  All persons or entities that properly execute and timely file a request for exclusion from the Class; and

e.  Any attorneys representing the Plaintiffs or the Class.

## CLAIMS FOR RELIEF
### COUNT I
### Unjust Enrichment
### (On behalf of Plaintiffs and the Class)

100.  Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

101.  Plaintiffs and the Class have conferred a benefit upon Defendant in the form of the money Defendant received from them through tariff surcharges on goods during the Class Period.

102.  Defendant appreciates and/or has knowledge of the benefits conferred upon it by Plaintiffs and the Class.

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 25

103.   Under principles of equity and good conscience, Defendant should not be permitted to retain the amount of the tariff surcharges obtained from Plaintiffs and the members of the Class, which Defendant has unjustly obtained as a result of its price increases on goods subject to unlawful tariffs. As it stands, Defendant has retained profits generated from its sales of products subject to tariff-related price increases and should not be permitted to retain those ill-gotten profits when it is seeking a refund of the duties it paid.

104.   Accordingly, Plaintiffs and the Class seek full disgorgement and restitution of any money Defendant has retained as a result of the unlawful and/or wrongful conduct alleged herein.

**COUNT II**
**Money Had and Received**
**(On behalf of Plaintiffs and the Class)**

105.   Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

106.   Plaintiffs allege this claim individually and on behalf of the proposed class.

107.   Defendant received money from Plaintiffs and from each member of the proposed Class in the form of a tariff surcharge. The Supreme Court has determined that the tariffs were unlawful.

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 26

108.   The money belonged to Plaintiffs and to each member of the proposed Class.

109.   Defendant has not returned the money.

110.   It will give offense to equity and good conscience if Defendant is permitted to retain the tariff surcharge. Plaintiffs seek the return of the money in an amount to be proven at trial.

111.   Plaintiffs seek all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to her.

**COUNT III**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal Bus. & Prof. Code § 17200, *et seq.***
**(On behalf of Plaintiffs and the Class)**

112.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

113.   Defendant, a California resident entity, engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.* which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

114.   California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 27

115.    ShoeDazzle acted with knowledge and intent.

116.    Defendant's conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. ShoeDazzle engaged in unfair and deceptive acts by: (i) charging customers a tariff surcharge; and (ii) retaining tariff refunds despite having passed the costs to its customers.

117.    ShoeDazzle's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. ShoeDazzle's violation of consumer protection and unfair competition laws resulted in harm to consumers.

118.    Defendant's wrongful conduct occurred in the conduct of trade or commerce—*i.e.*, while Defendant were engaged in sales nationwide.

119.    Defendant has profited immensely from its unlawful conduct.

120.    As a result of Defendant's conduct, Plaintiffs and Class members were injured in their business or property—i.e., economic injury—in that they paid inflated prices for goods subject to tariffs.

121.    As described throughout this Complaint, Defendant's conduct (1) caused substantial injury that is (2) not reasonably avoidable by consumers and that (3) is not outweighed by the benefits to consumers or competition.

122. Defendant's unfair or deceptive conduct proximately caused Plaintiffs' and Class members' injury because, but for the challenged conduct, Plaintiffs and Class members would not have paid inflated prices for goods subject to tariffs and they did so as a direct, foreseeable, and planned consequence of that conduct.

123. The injuries to Plaintiffs and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

124. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misconduct alleged in this complaint.

125. Therefore, Plaintiffs and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendant because of their unfair and improper business practices; a permanent injunction enjoining Defendant's unlawful and unfair business activities; and any other equitable relief the Court deems proper.

**COUNT V**
**Contract**
**(On behalf of Plaintiffs and the Class)**

18. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

**A. The Tariff Surcharge Provision of the Parties' Retail Sales Contract Was Based on a Mutual Mistake of Law**

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 29

19.    Plaintiffs and the Class entered into a retail sales contract with Defendants.

20.    One provision of that contract provided that Plaintiffs and the Class would pay a tariff surcharge to Defendants.

21.    At the time of the contract, the tariffs on which Defendants based the surcharge were illegal.

22.    At the time of the contract, Plaintiffs and Defendants shared a fundamental, erroneous belief about the law: they believed that the federal government had the right to collect those tariffs.

23.    There was, and could not have been, a true meeting of the minds on the tariff surcharge provision of the contract.

24.    Plaintiffs and the Class request that this Court reform the retail sales contracts to remove the tariff surcharge provision.

**A. The Retail Sales Contract Included a Unlawful Term**

25.    The retail sales contracts between Plaintiffs and the Class and Defendants contained several distinct objects, one of which was the tariff surcharge provision.

26.    The tariff surcharge provision was unlawful because Defendants could not collect from Plaintiffs and the Class a tax which was illegal at the time of contract formation.

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 30

27.     Under CA Civ Code § 1599, the retail sales contracts are void as to the tariff surcharge provision.

### B. The Tariff Surcharge Provision is Unconscionable

28.     The tariff surcharge provision of the sales contract was unconscionable at the time of formation because it was based on an illegal tariff.

29.     Plaintiffs and the Class request that this Court exercise its power under CA Civ Code § 1670.5 (2025) to (1) refuse to enforce the unconscionable tariff surcharge provision in the sales contract; (2) strike the unconscionable tariff surcharge provision from the sales contract; and (3) enforce the rest of the sales contract without the unconscionable tariff surcharge provision.

30.     With the tariff surcharge provision removed, voided, or ruled unenforceable, Defendants must return the tariff surcharges that they collected from Plaintiffs and the Class.

### COUNT V
### Declaratory Relief, 28 U.S.C. § 2201
### (On behalf of Plaintiffs and the Class)

31.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

32.     Plaintiffs allege this claim individually and on behalf of the proposed Class.

33.     Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

34.     Plaintiffs' claims present an actual controversy as to the rightful ownership of the tariff surcharges paid to Defendant.

35.     Plaintiffs have suffered injury by having been required to pay Defendant a tariff surcharge because of the subject tariffs on Defendant's product. And Plaintiffs will imminently suffer injury by Defendant's unlawful retention of the tariff refund.

36.     This Court can exercise its equitable power to enter a declaratory judgment that retention of the tariff surcharges paid by Plaintiffs but refunded to Defendant is unlawful for any of the above reasons.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and members of the proposed class pray for relief and judgment against Defendant, as follows:

      a.     For an order certifying the proposed classes, appointing Plaintiffs and their counsel to represent the proposed class and notice to the proposed classes to be paid by Defendant;

      b.     For damages suffered by Plaintiffs and members of the proposed class;

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 32

c.   For restitution to Plaintiffs and the proposed class of all monies wrongfully obtained by Defendant;

d.   For injunctive relief requiring Defendant to cease and desist from engaging in the unlawful, unfair, and/or deceptive practices alleged in the Complaint;

e.   An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendant's past conduct;

f.   For Plaintiffs' reasonable attorneys' fees, as permitted by law;

g.   For Plaintiffs' costs incurred;

h.   For pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

i.   For such other and further relief that this Court deems just and proper under equity or law, including the award of punitive damages.

DATED this 12th day of June, 2026.          Respectfully submitted,

By: /s/ M. Anderson Berry
M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
Brandon P. Jack (SBN 325584)
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 33

Seattle, WA 98101
Phone: 916.823.6955
*anderson@emeryreddy.com*
*gregory@emeryreddy.com*
*brandon@emeryreddy.com*

John J. Nelson (SBN 317598)
**MILBERG, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (858) 209-6941
*jnelson@milberg.com*

Jason T. Dennett*
**MILBERG, PLLC**
1700 7th Ave, Suite 2100
Seattle, WA 98101
Telephone: (516) 515-9124
*jdennett@milberg.com*

Gary M. Klinger*
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: 866.252.0878
*gklinger@milberg.com*

Zachary Arbitman*
Nicole A. Maruzzi*
**FELDMAN SHEPHERD**
**WOHLGELERNTER TANNER**
**WEINSTOCK & DODIG, LLP**
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
Telephone: (215) 567-8300
*zarbitman@feldmanshepherd.com*
*nmaruzzi@feldmanshepherd.com*

Terence R. Coates*
Jonathan T. Deters*
**MARKOVITS, STOCK**
**& DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
*tcoates@msdlegal.com*
*jdeters@msdlegal.com*

*Counsel for Plaintiffs*

**Pro Hac Vice* applications forthcoming

PLAINTIFFS' CLASS ACTION COMPLAINT
FOR DAMAGES - 34